UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
TAMEKA SIMMONS,

        Plaintiff,

  v.                                 10cv8990 (JSR) (RLE)

AKIN GUMP STRAUSS HAUER & FELD LLP,

        Defendant.
---------------------------------------------------------------x

# DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

PILLSBURY WINTHROP SHAW PITTMAN LLP

2300 N St., N.W.
Washington, D.C. 20037
Telephone: (202) 663-8000
Facsimile: (202) 663-8007
&
1540 Broadway
New York, New York 10036
Telephone: (212) 858-1000
Facsimile: (212) 858-1500

*Attorneys for Defendant*
*Akin Gump Strauss Hauer & Feld LLP*

## TABLE OF CONTENTS

I.    ARGUMENT ........................................................................................................................3

    A.    There is No Inference of Race Discrimination. ........................................................3

    B.    There is No Evidence of Pretext. ..............................................................................5

    C.    There is No Evidence Ms. Simmons Was Terminated In Retaliation For Taking FMLA Leave. ................................................................................................8

II.    CONCLUSION ...................................................................................................................10

## TABLE OF AUTHORITIES

### CASES

**Page**

*Abdullah v. Skandinaviska Enskilda Banken Corp.*, No. 98 Civ. 7398 (JSR),
   1999 WL 945238 (S.D.N.Y. Oct. 19, 1999) ........................................................................7

*Balut v. Loral Elec. Sys.*, 988 F. Supp. 339 (S.D.N.Y. 1997)............................................................6

*Duffy v. Wolle*, 123 F.3d 1026 (8th Cir. 1997) ..................................................................................4

*Grutter v. Bollinger*, 539 U.S. 306 (2003)..........................................................................................3

*Henry-Lee v. City of New York*, 746 F. Supp. 2d 546 (S.D.N.Y. 2010) ...........................................8

*Herschman v. City Univ. of New York*, No. 08 Civ. 11126 (JSR)(FM), 2011 WL 1210200
   (S.D.N.Y. Feb. 28, 2011) ..................................................................................................6

*Lee v. Poughkeepsie City Sch. Dist.*, No. 06-CV-4660 (KMK), 2008 WL 852790
   (S.D.N.Y. Mar. 31, 2008).................................................................................................7

*Memnon v. Clifford Chance US LLP*, 667 F. Supp. 2d 334 (S.D.N.Y. 2009) ..................................8

*Paddington Partners v. Bouchard*, 34 F.3d 1132 (2d Cir. 1994) .....................................................8

*Ragin v. E. Ramapo Cent. Sch. Dist.*, 05 Civ. 6496 (PGG), 2010 WL 1326779
   (S.D.N.Y. Mar. 31, 2010).................................................................................................2

*Scaria v. Rubin*, 117 F.3d 652 (2d Cir. 1997)....................................................................................6

*Sutton v. Toshiba Am., Inc.*, No. 98 Civ. 765 (JSR), 1999 WL 335670
   (S.D.N.Y. May 25, 1999) .................................................................................................7

*Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111 (2d Cir. 2007) .....................................................3

*United States v. City of New York*, 713 F. Supp. 2d 300 (S.D.N.Y. 2010).......................................7

*Zenni v. Hard Rock Cafe Int'l, Inc.*, 903 F. Supp. 644 (S.D.N.Y. 1995)...........................................7

Defendant Akin Gump Strauss Hauer & Feld LLP ("Akin Gump") submits this reply in support of its motion for summary judgment ("Motion"). Plaintiff Tameka Simmons' bulky Opposition denies only 7 of the 83 paragraphs of Defendant's Statement of Undisputed Facts ("Statement")[1] and, in addition, does not refute any of the following material facts:

- In 2007, due to "tremendous demand" for the services of Akin Gump's Investment Funds Practice Group ("IFPG"), group co-chairs Stephen Vine and Prakash Mehta hired eight lateral associates for the New York office, including Ms. Simmons. (Statement at ¶¶ 2-3).

- Tia Breakley, then counsel in the New York IFPG and Ms. Simmons' former sorority sister, and Oluriyike Ojediran, an Akin Gump associate and former Debevoise colleague of Ms. Simmons (both African-American), recruited Ms. Simmons to join Akin Gump. (Statement at ¶¶ 5-6). Both told Ms. Simmons that the IFPG was a good group, and Ms. Breakley had not experienced any issues "as an African-American woman at the firm," and had a good experience working very closely with Mr. Vine. (*Id.*).

- After receiving ample positive feedback from partner interviews, Mr. Vine and Mr. Mehta enthusiastically hired Ms. Simmons. (Statement at ¶ 7).

- Ms. Breakley had been working on a project for Christopher Gorman-Evans, a partner in the London IFPG, and recommended that Ms. Simmons be staffed on the project. (Statement at ¶¶ 10-11). She was. (*Id.*). Sheila Sharifi-Azad (Caucasian), another lateral associate who joined the New York IFPG in 2007, was also assigned to the project and billed over 900 hours to it. (*Id.* at 10-11, 14; Raskin Affidavit Ex. 55).

- Within weeks of joining, Ms. Simmons requested a partner mentor and was assigned Ann Tadajweski. (Statement at ¶ 17). On January 14, 2008, Ms. Simmons stated that she "appreciate[d] [Ms. Tadajweski] taking the time to get [her] on board and integrat[ing] [her] into the client and practice, thank you." (*Id.* at ¶ 30). She never complained about Ms. Tadajweski in any way.

- Ms. Simmons attended at least 22 formal training programs at Akin Gump, which offered no training programs to others that it did not offer to Ms. Simmons. (Statement at ¶ 20). Ms. Simmons identifies only one partner (Arina Lekhel) who, "on occasion," would not talk to her about substantive work matters when she asked. (*Id.* at ¶ 21).

- On September 15, 2008, Lehman Brothers collapsed, beginning a financial crisis that Mr. Mehta describes as having "a clear affect [sic] on our practice area." (Statement at ¶ 38).

- Mr. Mehta immediately fired a Los Angeles IFPG attorney (Caucasian) for "economic reasons." (Statement at ¶ 41).

- In February 2009, Akin Gump began a formal RIF process. (Statement at ¶ 58). Mr. Vine and Mr. Mehta selected three associates from the New York IFPG – two Caucasian

---

[1] As described below, her denials contain no contradictory evidence.

males and Ms. Simmons.  (*Id*.).  Mr. Vine, however, decided not to include Ms. Simmons, primarily for the purposes of maintaining "women and minorities."  (*Id*.).

- On March 6, 2009, Akin Gump laid off 47 lawyers, including seven IFPG associates (six Caucasian and one Asian).  (Statement at ¶ 60).

- The volume of work in the IFPG continued to be in free-fall.  (Statement at ¶¶ 61, 71).

- On April 6, 2009, Akin Gump announced that due to the "difficult economic environment forecasted for 2009, we…decided to defer the start dates for incoming associates in certain practice groups."  The New York IFPG deferred incoming associates to the last possible start date set by Akin Gump—March 1, 2010.  (Statement at ¶ 62).

- In the Summer of 2009, while on vacation, Ms. Simmons learned that Akin Gump's Chairman had publicly reported that the IFPG was "really lagging in terms of billable hours" and that he would be meeting shortly with "Steve and Prakash…to discuss."  (Statement at ¶ 64).  Her reaction: "I am freaking out!"[2]

- Thereafter, Mr. Mehta took a Dallas IFPG associate (Caucasian) off the payroll, because "we still weren't busy."  (Statement at ¶ 66).

- In September 2009, Mr. Mehta and Mr. Vine decided to terminate Ms. Simmons at year end because they needed to take further steps to reduce capacity.  (Statement at ¶¶ 71-72).

- In 2009, IFPG revenue was down 26% and average attorney billable hours were down 14% from 2008.  (Statement at ¶ 83).

In response, Ms. Simmons argues that she warned Akin Gump that she "would require extensive hands-on training," Simmons Affidavit at 4, so any lack of performance was Akin Gump's fault, and that she was a very successful first year associate at another law firm, although in a different practice area. She wrongly asserts that the only possible explanation for her termination (with dozens of other associates) was race discrimination or her approved FMLA leave *over a year earlier*.  She is wrong.  *See Ragin v. E. Ramapo Cent. Sch. Dist.*, No. 05 Civ. 6496 (PGG), 2010 WL 1326779, at *6 (S.D.N.Y. Mar. 31, 2010) ("Mere conclusory statements, conjecture or speculation by the plaintiff will not defeat a summary judgment motion.").[3]

---

[2] Ms. Simmons' objection to these facts as "hearsay" is wrong. (Opposition Statement at ¶ 64). Further, many of the exhibits attached to Ms. Simmons' own affidavit contain inadmissible hearsay.  (*See, e.g.*, Exhibits 6, 7, 9, 10, 13, and 15).

[3] Ms. Simmons has added voluminous irrelevant statements to her admissions in her Local Rule 56.1 Statement ("Simmons Statement") and added more than 250 alleged "facts," which are

**I.    ARGUMENT**

    **A.    There is No Inference of Race Discrimination.**

Ms. Simmons cannot establish an inference of race discrimination, given the undisputed evidence that, in June 2007, Mr. Vine and Mr. Mehta enthusiastically recruited and hired her, noting her addition of diversity to the group as a positive; initially selected her for the March 2009 RIF, but removed her from the list; and, in September 2009, made the decision to terminate her employment, after firing many other IFPG attorneys.  Her arguments fail.

First, Ms. Simmons argues that the fact that Mr. Vine noted diversity as one of many positives in connection with her hiring, (Opposition Statement at ¶ 106), and decided to remove her from the March 2009 RIF in an effort "to encourage our practice group to be stronger and have a better population with women and minorities," (Statement at ¶ 58), supplies an inference of race discrimination in connection with her termination.  This theory has no basis.  Not surprisingly, Ms. Simmons cites no authority in support.[4]  Rather, the United States Supreme Court has noted that "major American businesses have made clear that the skills needed in today's increasingly global marketplace can only be developed through exposure to widely diverse people, cultures, ideas, and viewpoints."  *Grutter v. Bollinger*, 539 U.S. 306, 330 (2003).  Accordingly, the EEOC states that "Title VII permits diversity efforts designed to open up opportunities to everyone," and directs employers to "recruit, hire, and promote with EEO in mind, by implementing practices designed to widen and diversify the pool of candidates

---

largely repetitive and/or irrelevant.  This ineffective tactic violates Local Rule 56.1's direction that non-movants may include a "short and concise statement of *additional* material facts."

[4] Ms. Simmons cites *Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111 (2d Cir. 2007), which does not help her.  In *Tomassi*, the plaintiff had evidence that her supervisor made age-related remarks to her every month or so, including at her termination; that her supervisor had hired younger employees while seeking to attract a younger clientele; and that she was replaced by a worker 38 years her junior.  Under those circumstances, the *Tomassi* Court found that the comments implied that she was not well suited to work with a younger clientele.

considered for employment openings…" EEOC Compliance Manual 15-31, 15-53 (2006). Therefore, "[a]n employer's affirmative efforts to recruit minority, female applicants [do] not constitute discrimination." *See Duffy v. Wolle*, 123 F.3d 1026, 1038-39 (8th Cir. 1997).

Second, Ms. Simmons asserts race discrimination based on the fact that she never transferred from Akin Gump's New York office to its D.C. office. It is undisputed, however, that <u>no one</u> in the IFPG transferred from its New York to its D.C. office, while Ms. Simmons was at Akin Gump or after. (Statement at ¶ 76). Transfers between other offices or at other times are wholly irrelevant. Moreover, there was no agreement between Ms. Simmons and Akin Gump regarding a date for a transfer, and her offer letter is silent on the point. (Statement at ¶ 8).[5] In addition, it is undisputed that Ms. Simmons told friends and her own mother "I'm having so much fun that we've postponed our move until . . . whenever." (Statement at ¶¶ 31, 37). To date, she has not moved. (Simmons Affidavit at ¶ 28).

Third, Ms. Simmons argues that she needed "extensive hands on training," Simmons Affidavit at 4, and admits that she attended at least 22 training sessions at Akin Gump, but claims that she needed even more. It is undisputed, however, that Ms. Simmons cannot identify <u>any</u> training offered to her counterparts from which she was excluded. Likewise, it is undisputed that when she asked for a partner mentor, she was promptly assigned Ms. Tadajweski whom she expressly thanked for her mentorship. (Statement at ¶ 30). There is no evidence she was ever unsatisfied.[6] As this Court has held, Ms. Simmons' recent opinions about more or better

---

[5] Ms. Simmons purports to deny this, (Opposition Statement at ¶ 8), but offers no evidence.

[6] Ms. Simmons oddly claims that "[Ms. Tadajweski] engaged in none of the activities that Akin prescribes in its only written guidelines for mentors [of first year associates]." (Simmons Affidavit at ¶ 12; Raskin Affidavit Ex. 13). There is no evidence Akin treated any other laterals like a first year. Ms. Simmons also claims Mr. Barth never took any action to mentor her as part of a formal mentor program. (Opposition at ¶ 127). However, there is no evidence that the firm ever implemented this mentoring program.

informal mentoring from partners and insufficient training do not save her race discrimination claims. (*See* Motion at 12 and authority cited).

Fourth, Ms. Simmons' suggestion of discrimination because she was assigned to work on a project with a "notoriously difficult" partner (her words), Mr. Gorman-Evans, falls apart on several levels. First, it is undisputed that a Caucasian associate, Ms. Azad, was also assigned to work on the same project with Mr. Gorman-Evans, and billed 900 hours to it. Second, other Caucasian associates reported that Mr. Gorman-Evans was difficult to work with. Third, it is undisputed, that Ms. Breakley recommended that Ms. Simmons be staffed on the project. Fourth, it is undisputed that Mr. Vine thought that this was a "plum" project. Finally, there is no evidence that Mr. Gorman-Evans treated Ms Simmons differently than anyone else or had anything to do with the decision to terminate Ms. Simmons' employment. Similarly, Ms. Simmons complains about Mr. Vine's suggestion that she work on a project with an associate whom she believed was difficult. (Opposition at 6). Putting aside the wisdom of turning down an assignment from the co-head of the IFPG, it is undisputed that after Ms. Simmons expressed her concerns, she was not assigned to this project. (Opposition Statement at ¶ 161).

Fifth, Ms. Simmons continues to rely on allegations that a partner once confused her with a secretary and another chatted with her about *The Real Housewives of Atlanta.* As courts have repeatedly found, such comments, particularly by non-decision makers, are not evidence of race discrimination. (*See* Motion at 15 and authority cited).

### B. There is No Evidence of Pretext.

In February 2009, Akin Gump began a formal RIF process and, on March 6, 2009, laid off 47 lawyers, including 7 IFPG associates – 6 Caucasian and 1 Asian. Two IFPG associates (Caucasian) were also terminated in October 2008 and June 2009 for economic reasons. (Statement at ¶¶ 41, 66). Moreover, in 2009 the IFPG revenue was down 26% from 2008 and,

despite the RIF, the IFPG average attorney billable hours were down 14%.  (Statement at ¶ 83).

In addition, it is undisputed that Mr. Mehta and Mr. Vine selected Ms. Simmons for inclusion in a layoff in March 2009 along with two Caucasian male associates in the New York IFPG for economic reasons, based on their assessment of the associates' performance and the potential interruption to the IFPG's clients.  It is also undisputed (in most cases with contemporaneous evidence) that many partners had problems with Ms. Simmons' performance, and that Mr. Mehta and Mr. Vine were aware of these problems.  (Statement at ¶¶ 15, 23, 28, 42, and 54).  Ms. Simmons challenges the wisdom of initially including her, but courts must "decline to 'sit as a super-personnel department that reexamines an entity's business decisions.'"  *Balut v. Loral Elec. Sys.*, 988 F. Supp. 339, 350 (S.D.N.Y. 1997) (granting summary judgment against employee terminated in a RIF) (citing *Scaria v. Rubin*, 117 F.3d 652, 655 (2d Cir. 1997)); *see also, Herschman v. City Univ. of New York*, No. 08-Civ-11126 (JSR)(FM), 2011 WL 1210200, at *16 (S.D.N.Y. Feb. 28, 2011) ("The role of the Court, however, is to prevent unlawful hiring practices, not to act as a super-personnel department . . . .").[7]

Likewise, Mr. Mehta and Mr. Vine were not required to wait for a new cycle of performance reviews in 2009 to re-evaluate their initial determination, for the reasons cited above.  It is also undisputed that Mr. Vine worked with Ms. Simmons after her 2008 review on a matter in which she misunderstood the question: Ms. Lekhel helped correct it.  (Statement at ¶ 54).  Finally, Ms. Simmons' illogical assertion that Mr. Mehta's decision to offer her a better transition package than those in the RIF is evidence of pretext is unsupported by any authority.[8]

---

[7] The only Caucasian associate who received more "Needs Development" rankings in the 2008 review cycle than her was included in the March 2009 layoff.  (*See* Statement at 48; Opposition Statement at ¶¶ 223, 272).

[8] Ms Simmons wrongly asserts that the fact that a Dallas IFPG associate was taken off the payroll in June 2009 for economic reasons (six months before Ms. Simmons' termination) and

Ms. Simmons also claims that because she was the only female African-American associate in Akin Gump's New York office when she was terminated, the economic crisis is pretext. She is wrong here too. As a preliminary matter,

> The statistical evidence has many weaknesses. First it is not supported by any expert analysis . . . .Second, plaintiff's sample is small, meaning that small changes in hiring may prompt dramatic statistical fluctuations, making statistical analyses untrustworthy in this situation. Third, and most important in this case, statistical evidence of an employer's general hiring practices is insufficient to prove that a particular plaintiff was discriminated against.

*Zenni v. Hard Rock Cafe Int'l, Inc.*, 903 F. Supp. 644, 653-54 (S.D.N.Y. 1995) (citations omitted) (finding plaintiff's statistical evidence "insufficient to help establish a prima facie case, insufficient to show pretext, and insufficient to demonstrate discriminatory intent"). Indeed, "plaintiff's raw numbers prove nothing in the absence of any analysis of their statistical significance or of any comparative data showing the demographics of the relevant labor pool." *Abdullah v. Skandinaviska Enskilda Banken Corp.*, No. 98-Civ.-7398 (JSR), 1999 WL 945238, at *8 (S.D.N.Y. Oct. 19, 1999) (Rakoff, J.) (fact that plaintiff was the only non-Caucasian over 40 employed at defendant's foreign exchange desk is of little value in proving discrimination and holding that "plaintiff's numerical evidence – it cannot fairly be called statistical evidence – is [insufficient] to create a triable issue as to discrimination"); *see also*, *Sutton v. Toshiba Am., Inc.*, No. 98-Civ.-765 (JSR), 1999 WL 335670, at *3 (S.D.N.Y. May 25, 1999) ("numerical disparities are inadmissible absent any showing of statistical reliability"); *Lee v. Poughkeepsie City Sch. Dist.*, No. 06-CV-4660 (KMK), 2008 WL 852790, at *9 (S.D.N.Y. Mar. 31, 2008) (emphasis in original) (employee must show "she *in particular* has been discriminated against").[9]

---

made a staff attorney supports her discrimination claim. Akin Gump paid him $600 in 2009 and nothing in 2010. (Statement at ¶ 66).

[9] In *United States v. City of New York*, 713 F. Supp. 2d 300, 317-18 (S.D.N.Y. 2010), the defendant had never hired anyone from the plaintiff's protected class. Further, the Court left

- 7 -

Finally, on February 2, 2011, this Court dismissed Ms. Simmons' retaliation claims that were based on Akin Gump's <u>alleged</u> failure to immediately provide her (a former employee) with an attorney in connection with a government investigation. Ms. Simmons now claims that this alleged "refusal" is evidence that her termination a year earlier was discriminatory.[10] There is no evidence that Akin Gump treated any ex-employee differently, and employment discrimination against a <u>former</u> employee is a legal impossibility. *See Memnon v. Clifford Chance US LLP*, 667 F. Supp. 2d 334, 342 (S.D.N.Y. 2009).

As a last desperate move, Ms. Simmons claims that Akin Gump's objection to producing documents relating to the separation of a <u>different</u> employee who recently left Akin Gump over <u>two years</u> after Ms. Simmons and, which Akin Gump has no obligation to produce under applicable discovery rules (*see* Raskin Affidavit Exhibit 62), is somehow evidence of race discrimination. Not surprisingly, she provides no fact or law to support her strained theory.[11]

### C. There is No Evidence Ms. Simmons Was Terminated In Retaliation For Taking FMLA Leave.

In the year following Ms. Simmons' FMLA leave, Mr. Vine encouraged others to work with her; removed her from the March 2009 RIF list; worked with her himself; and terminated

---

unclear what weight, if any, the inexorable zero carries, finding the remaining anecdotal evidence sufficient to show discrimination.

[10] Akin Gump provided Ms. Simmons counsel of choice within 24 hours of her request. (*See* Reply in Support of its Motion for Partial Judgment on the Pleadings, at n. 2).

[11] Ms. Simmons' last minute request for additional time to obtain these documents fails to meet the requirements of Fed. R. Civ. P. 56(d)(2). "A reference to [Rule 56(d)(2)] and to the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a [Rule 56(d)(2)] affidavit . . . and the failure to file an affidavit under [Rule 56(d)(2)] is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137 (2d Cir. 1994). Moreover, "[t]he parties had a full and fair opportunity to conduct discovery, and it is too late for them to complain now." *Henry-Lee v. City of New York*, 746 F. Supp. 2d 546, 575 (S.D.N.Y. 2010) (denying request for additional discovery).

the employment of many other IFPG attorneys before being forced for economic reasons to terminate her. (Statement at ¶¶ 41, 53, 54, 57, 58, and 60).

In response, Ms. Simmons first alleges that she received a positive verbal evaluation from Ms. Tadajweski and Ms. Lekhel prior to taking FMLA leave in July 2008, (Opposition at 6), but received "mixed" written reviews after returning. This theory has several problems. First, there is ample undisputed evidence of dissatisfaction with Ms. Simmons' performance predating her leave that was reflected in her formal review. (Statement at ¶¶15, 23, and 28). Second, Ms. Simmons asserts that she informed Ms. Tadajweski about her need for leave in early 2008. (Opposition at ¶ 6). Accordingly, any retaliatory animus on the part of Akin Gump should have already been present in July 2008 when Ms. Simmons received her "positive" verbal review. Finally, Ms. Simmons' new theory contradicts her own Amended Complaint in which she twice states her written performance review was "highly positive." (Amended Complaint at ¶¶ 3, 29).

Ms. Simmons next points to seven matters for Client 031010 on which Ms. Azad supposedly replaced her while she was out on FMLA leave. However, Ms. Azad billed more than de minimus time on only one of these matters (Matter 0168).[12] Further, Ms. Simmons had billed only 3.3 hours to this matter before her leave. (Simmons Affidavit Ex. 1). More important, Ms. Simmons asks the Court to overlooks the ten new matters for Client 031010 she began working on between September and November 2008, shortly after her return from FMLA leave, to which she eventually billed 275 hours.[13] (*See* Simmons Affidavit Ex. 1). Ms. Simmons also complains that in December 2008 another matter for Client 031010 was transferred to Ms. Azad when Ms. Simmons abruptly took six personal days to be with her brother who had "a

---

[12] Many of the matters are insignificant. For example, Ms. Azad billed only 7.8 hours total on Matter 0133 and 10.5 hours on 0143.

[13] See Matters 002, 006, 048, 050, 056, 057, 117, 172, 175, and 176 for Client 031010.

major accident." (Statement at ¶ 44). There is no connection between this and Ms. Simmons' FMLA leave five months earlier, particularly because Ms. Simmons admits that she was assigned to this project <u>after</u> taking FMLA leave. (Opposition Statement at ¶ 257).

Finally, Ms. Simmons concedes that no one mentioned her FMLA leave at all in a negative context. (Statement at ¶¶ 34, 51). Rather, Ms. Tadajweski advised Ms. Simmons in the Fall of 2008 that it would be good for her professional development to spend more time in the office, following a vacation for her wedding and honeymoon from June 11 - 25, 2008; a request on September 25, 2008 to schedule six vacation days in 2008; and just a few days later, on October 1, 2008, a request for an additional three-week vacation. (Statement at ¶¶ 33, 34, 40). Moreover, Ms. Tadajweski's comment that she *wanted* to work with Ms. Simmons "on an uninterrupted basis next year – with less time away from the group, Tameka will be able to focus on further developing her skills," is entirely positive, common sense advice.

## II.   CONCLUSION

For these reasons and those set forth in Defendant's Motion, Defendant respectfully requests that the Court grant summary judgment on Ms. Simmons' remaining claims.

DATED:  May 2, 2011                              Respectfully submitted,

                                                 /s/
                                                 Christine Nicolaides Kearns (admitted pro hac vice)
                                                 PILLSBURY WINTHROP SHAW PITTMAN LLP
                                                 2300 N Street, N.W.
                                                 Washington, D.C.  20037
                                                 Telephone:  (202) 663-8000
                                                 Facsimile:  (202) 663-8007
                                                 E-mail:  christine.kearns@pillsburylaw.com

                                                 COUNSEL FOR AKIN GUMP STRAUSS
                                                 HAUER & FELD LLP